JUDGE HELLERSTEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

12 CIV 5971

CASTLE OIL CORPORATION,                          :

                          Plaintiff,             :        **COMPLAINT**

          v.                                     :

LOUIS ROMANO, SR., JOHN DOES AND                 :        **12 CIV.**
X Y & Z CORPORATIONS, BEING ANY OTHER
PERSONS AND/OR ENTITIES PARTICIPATING            :
IN THE PUBLISHING, REPUBLISHING AND/OR
DISTRIBUTION OF THE DEFAMATORY                   :
STATEMENTS AT ISSUE,
                                                 :
                          Defendants.
                                                 :

-------------------------------------------------------------------x



RECEIVED
AUG 03 2012
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Castle Oil Corporation (hereinafter, "Castle"), by it attorneys, Brown &

Whalen, P.C., as and for its complaint against defendants Louis Romano, Sr., John Does and X

Y & Z Corporations (hereinafter, collectively, the "Defendants"), alleges as follows:

### Nature of the Action

1.      This is an action by Castle against Defendants for injunctive and monetary

relief arising out of Defendants' intentionally false and misleading misrepresentations of fact in

disparaging Castle's business and defaming Castle's commercial reputation. Defendants' acts

constitute violations of the Lanham Act, 15 U.S.C. §1125, defamation, tortious interference with

contractual relations, interference with advantageous business relations, New York General

Business Law §349 and unfair competition.

## The Parties

2.      Castle is a New York corporation organized and existing under the laws of the State of New York, with its principal place of business at 440 Mamaroneck Avenue, Suite 402, Harrison, New York 10528.

3.      Defendant Louis Romano, Sr., ("Romano") is a resident of New Jersey and the chief executive officer of Informa Energy, Inc. ("Informa"), a corporation having its principal place of business at 41 Grand Avenue, River Edge, New Jersey 07661. Romano is also a former senior employee of Castle who resigned in or about 2006 and has conducted business activities in competition with Castle at various times since then.

4.      Romano, individually and through Informa, regularly engages in business activities in New York, including activities in competition with Castle.

5.      Upon information and belief, Defendants John Does and X Y & Z Corporations are any other persons or entities participating in the publishing, republishing, and/or distribution of the defamatory statements at issue herein. The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants Does and X, Y & Z Corporations are unknown to Castle, which therefore sues said Defendants by such fictitious names. Castle is informed and believes, and thereon alleges, that each of the Defendants designated as a Doe Defendant or X Y Z Corporation Defendant is responsible in some manner for the acts alleged in this complaint and has caused injury and damages to Castle as a proximate result thereof. To the extent their identities become known to Castle, those Defendants will be joined and the acts in which they engaged will be pleaded in an amended complaint.

## Jurisdiction and Venue

6.     This Court has original jurisdiction of this action under 28 U.S.C. § 1331, based upon the federal question raised by Defendants' violation of 15 U.S.C. § 1125(a)(1) by misrepresenting the nature of Plaintiff's goods, services and commercial activities.

7.     This Court has supplemental jurisdiction over asserted pendent state law claims, pursuant to 28 U.S.C. §1367(a), because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.     Venue is properly placed in this judicial district under 28 U.S.C. §1391(b) as a substantial part of the events alleged herein have occurred within this district.

## Factual Background Common To All Claims

9.     Castle is the New York metropolitan area's largest independently owned fuel oil distributor. Castle has engaged in business continuously from 1928 to the present time. Among other things, Castle sells and delivers fuel oil to residential, commercial, and institutional customers in the New York metropolitan area. Over time, Castle has established a reputation for high quality and integrity. For many years, Castle has identified itself to the public and its customers through its registered trademark name and logo.

10.    In or about early June 2012, Defendant Romano published and/or republished, and circulated to an undisclosed number of recipients, including Castle's customers and other potential Castle customers, an email containing an attachment letter dated May 23, 2012, accusing Castle of participating in fraudulent and criminal conduct in connection with the delivery of fuel oil to its customers. A copy of the email dated June 4, 2012 (hereinafter, the

3

"Email") and the referenced May 23rd attachment letter (hereinafter, the "Defamatory Letter")
are collectively annexed hereto as Exhibit A and incorporated herein by reference.

        11.    Defendants John Does and X Y Z Corporations have published and
republished the Defamatory Letter by means of first class mail or otherwise.

        12.    The Defamatory Letter makes the following false and defamatory
statements concerning Castle:

> (i)    *"Did you know in 2007 a trucking company that delivered a major
> amount of oil to Castle Oil customers was arrested for stealing
> oil?"*
>
>> a.  The "trucking company" (identified in the Defamatory Letter
>> as T & S Trucking Corporation ["T & S"]) did not deliver a
>> "major amount of oil to Castle customers" and, in fact, made
>> fuel oil deliveries for other companies. Upon learning of the
>> indictment of the principals of T & S, Castle terminated all
>> deliveries by T & S to Castle customers.
>
> (ii)   *"Mr. Solimane from T & S Trucking pleaded guilty to stealing
> approximately $75,000,000 worth of fuel from customers."*
>
>> a.  In fact, the principals of two trucking companies, T & S and
>> Mystic Tank Lines Corporation ("Mystic"), were indicted.
>> Mystic's principals were accused of stealing $50,000,000
>> worth of fuel oil, and T & S's principals were accused of
>> stealing $25,000,000 worth of fuel oil. Moreover, since T & S
>> delivered fuel oil for other companies besides Castle, the

4

suggested inference or implication that $75,000,000 was stolen by T & S from Castle customers is false.

(iii)   *"After Castle received over 100 customer complaints regarding shortages they decided to keep these truckers and continue using their services:   It makes you wonder how much was Castle benefitting from these shortages?   Believe me they have not become a family worth $1,000,000,000 from an honest living."*

      a. Although the Defamatory Letter provides no specific time frame, Castle maintains a set of policies and procedures designed to ensure the integrity of deliveries to customers. When oil delivery shortages are reported, Castle investigates them. In the relatively few cases where a shortage is determined to be the fault of a trucking company working for Castle, the Castle customer is reimbursed, and Castle backcharges the trucker's account. Castle does not profit in any way from any alleged fuel oil delivery shortages. The allegations that the family that owns Castle is dishonest and has attained great wealth from dishonest conduct by shorting customers in fuel oil deliveries are false.

(iv)   *"As of today Castle Oil has thieves delivering your oil; BLT Transport has been indicted. BLT has had over 500 customer complaints to Castle for stealing fuel and they remain contracted to deliver oil to your buildings. The majority of their trucking is*

*undergoing investigation from the Federal government. Other truckers deliver oil for Castle that are under Federal investigation.*

*G & D Trucking*

*F & S Trucking*

*Enterprise Trucking*

*Nickmanda* .

*JM Trucking    \*The owner of this trucking company was the general manager of Castle and found out about their scam. Now he is a trucker on his way to becoming a millionaire."*

a. Castle does not have "thieves delivering its oil." BLT Transport was previously terminated by Castle and does not currently deliver to Castle customers. Although the Defamatory Letter does not specify any time frame, there have not been over 500 customer complaints to Castle that BLT "[stole] fuel." Castle is not aware that any trucking company currently used by Castle is under investigation by law enforcement authorities, much less that "the majority of [Castle's] trucking is undergoing investigation from the Federal government," and Castle believes such allegation to be false. Similarly, Castle is not aware of: "Other truckers [who] deliver oil for Castle that are under Federal investigation," including "G & D Trucking, F & S Trucking, Enterprise Trucking and Nickmanda;" Castle believes such allegations are false.

(v)     "The fact is that your supplier [Castle] willingly participated in this scam and the customer lost. Just look and you will see."

a.  Castle has not "willingly participated" in any such "scam."

13.     All of the preceding statements in the Defamatory Letter were maliciously published, republished, and circulated by Defendants to existing and potential customers of Castle without a reasonable basis for belief in their truth and with reckless disregard for the rights of Castle.

14.     On July 26, 2012, Castle learned that another letter dated July 9, 2012, styled a "Follow Up Notice," referencing the Defamatory Letter and making further false and scurrilous accusations of fraudulent and criminal conduct by Castle, was being published and communicated to third parties, including customers of Castle.

15.     By publishing false and defamatory statements concerning Castle to Castle's existing and potential customers and to other third parties in the business community, Defendants have caused and are continuing to cause substantial and irreparable harm and damage to Castle's reputation and good will.

16.     As a result of the false and defamatory statements published by Defendants, customers of Castle and/or potential customers may decline or may already have declined to do business or further business with Castle.

17.     Castle has no adequate remedy at law to redress the harm Defendants have caused and are continuing to cause to its business.

## STATEMENT OF CLAIMS

## COUNT I

**(Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125)**

18.     Castle repeats and realleges paragraphs 1 through 17 as if fully set forth at length herein.

19.     The aforementioned false representations in the Defamatory Letter that:

(i)     "in 2007, a trucking company that delivered a major amount of oil to Castle Oil customers was arrested for stealing oil," when, in fact, the "trucking company" (identified in the Defamatory Letter as T & S Trucking Corporation ["T & S"]) did not deliver a "major amount of oil to Castle customers" and, in fact, made fuel oil deliveries for other companies, and whose deliveries Castle terminated to Castle customers upon learning of the indictment of the principals of T & S;

(ii)    "Mr. Solimane from T & S pled guilty to stealing approximately $75,000,000 worth of fuel from customers," when, in fact, the principals of two trucking companies, T & S and Mystic, were indicted, where Mystic's principals were accused of stealing $50,000,000 worth of fuel oil and T & S's principals were accused of stealing $25,000,000 worth of fuel oil, and when, in fact, the implication that $75,000,000 was stolen by T & S from Castle customers is false since T & S delivered fuel oil for other companies besides Castle;

8

(iii)   "Castle received over 100 customer complaints regarding shortages" and, thereafter, "decided to keep these truckers and continue using their services," when, in fact, Castle maintains a set of policies and procedures designed to ensure the integrity of deliveries to customers, and when oil delivery shortages are reported, Castle investigates them, and in the relatively few cases where a shortage is determined to be the fault of a trucking company working for Castle, the Castle customer is reimbursed and Castle backcharges the trucker's account; Castle does not profit in any way from any alleged fuel oil delivery shortages;

(iv)   the allegations that the family that owns Castle is dishonest and has attained great wealth from dishonest conduct from shorting customers in fuel oil delivery are false;

(v)   "As of today, Castle has thieves delivering its oil," that "BLT [Transport] has had over 500 customer complaints to Castle for stealing fuel and they [BLT Transport] remain contracted to deliver oil to [Castle's customers]," when, in fact, BLT Transport was terminated by Castle and does not currently deliver to Castle customers, and there have not been over 500 customer complaints to Castle that BLT "[stole] fuel;"

(vi)   the list of truckers, contained in the Defamatory Letter, who are allegedly delivering oil for Castle and are under Federal investigation, such as "G & D Trucking, F & S Trucking,

Enterprise Trucking, Nickmanda and JM trucking," when, in fact, Castle is not aware that any trucking company currently used by Castle is under investigation by law enforcement authorities, much less that "the majority of [Castle's] trucking is undergoing investigation from the Federal government" nor that "[o]ther truckers [who] deliver oil for Castle that are under Federal investigation" including "G & D Trucking, F & S Trucking, Enterprise Trucking and Nickmanda," all of which are allegations which Castle believes to be false; and

(vii)   that "Castle willingly participated in the scam," when, in fact, Castle has not "willingly participated" in any such "scam;"

created and were intended to create confusion, mistake and deception among Castle's customers and prospective customers in the retail fuel oil business and the purchasing decisions of these customers and prospective customers.

20.     Defendants made the false representations to deceive Castle's existing retail and prospective customers and to influence their purchasing decisions.

21.     Defendants caused the false representations to enter interstate commerce.

22.     The foregoing false representations were made in bad faith.

23.     By virtue of the foregoing, Defendants are liable to Castle for the damages that Castle has sustained as a result of Defendants' violations of Section 43 of the Lanham Act, 15 U.S.C. § 1125.  In addition, Castle is entitled to injunctive relief to restrain and enjoin Defendants from making these false and defamatory claims in the future.

## COUNT II

### (Defamation)

24.     Plaintiff repeats and realleges paragraphs 1 through 23 as if fully set forth at length herein.

25.     Defendants have published and are continuing to publish false, malicious and defamatory statements concerning Castle.  Specifically, Defendants have falsely asserted in the Defamatory Letter that:

(i)     "in 2007, a trucking company that delivered a major amount of oil to Castle Oil customers was arrested for stealing oil," when, in fact, the "trucking company" (identified in the Defamatory Letter as T & S Trucking Corporation ["T & S"]) did not deliver a "major amount of oil to Castle customers" and, in fact, made fuel oil deliveries for other companies, and whose deliveries Castle terminated to Castle customers upon learning of the indictment of the principals of T & S;

(ii)    "Mr. Solimane from T & S pled guilty to stealing approximately $75,000,000 worth of fuel from customers," when, in fact, the principals of two trucking companies, T & S and Mystic, were indicted, where Mystic's principals were accused of stealing $50,000,000 worth of fuel oil and T & S's principals were accused of stealing $25,000,000 worth of fuel oil, and when, in fact, the implication that $75,000,000 was stolen by T & S from Castle

customers is false since T & S delivered fuel oil for other companies besides Castle;

(iii)   "Castle received over 100 customer complaints regarding shortages" and, thereafter, "decided to keep these truckers and continue using their services," when, in fact, Castle maintains a set of policies and procedures designed to ensure the integrity of deliveries to customers, and when oil delivery shortages are reported, Castle investigates them, and in the relatively few cases where a shortage is determined to be the fault of a trucking company working for Castle, the Castle customer is reimbursed and Castle backcharges the trucker's account; Castle does not profit in any way from any alleged fuel oil delivery shortages;

(iv)   the allegations that the family that owns Castle is dishonest and has attained great wealth from dishonest conduct from shorting customers in fuel oil delivery are false;

(v)   "As of today, Castle has thieves delivering its oil," that "BLT [Transport] has had over 500 customer complaints to Castle for stealing fuel and they [BLT Transport] remain contracted to deliver oil to [Castle's customers]," when, in fact, BLT Transport was terminated by Castle and does not currently deliver to Castle customers, and there have not been over 500 customer complaints to Castle that BLT "[stole] fuel;"

      (vi)    the list of truckers, contained in the Defamatory Letter, who are allegedly delivering oil for Castle and are under Federal investigation, such as "G & D Trucking, F & S Trucking, Enterprise Trucking, Nickmanda and JM trucking," when, in fact, Castle is not aware that any trucking company currently used by Castle is under investigation by law enforcement authorities, much less that "the majority of [Castle's] trucking is undergoing investigation from the Federal government" nor that "[o]ther truckers [who] deliver oil for Castle that are under Federal investigation" including "G & D Trucking, F & S Trucking, Enterprise Trucking and Nickmanda," all of which are allegations which Castle believes to be false; and

      (vii)    that "Castle willingly participated in the scam," when, in fact, Castle has not "willingly participated" in any such "scam;"

26.    All of the preceding statements in the Defamatory Letter were maliciously published, republished, and circulated by Defendants to existing and potential customers of Castle without a reasonable basis for belief in their truth and with reckless disregard for the rights of Castle.

27.    On July 26, 2012, Castle learned that another letter dated July 9, 2012, styled a "Follow Up Notice," referencing the Defamatory Letter and making further false and scurrilous accusations of fraudulent and criminal conduct by Castle, was being published and communicated to third parties, including customers of Castle.

28.     By publishing false and defamatory statements concerning Castle to Castle's existing and potential customers and to other third parties in the business community, Defendants have caused and are continuing to cause substantial and irreparable harm and damage to Castle's reputation and good will.

29.     As a result of the false and defamatory statements published by Defendants, customers and/or potential customers may decline or may already have declined to do business or further business with Castle.

30.     Castle has no adequate remedy at law to redress the harm Defendants have caused and are continuing to cause to its business.

## COUNT III

### (Tortious Interference with Contractual Relations)

31.     Castle repeats and realleges paragraphs numbered 1 through 30 as if fully set forth at length herein.

32.     Being New York metropolitan area's largest independent oil distributor, Castle has contracts to provide fuel oil to a number of residential and commercial customers.

33.     Defendants have published false and defamatory statements concerning Castle to the customers of Castle for the purpose of interfering with Castle's contractual relations with its customers. Upon information and belief, as a result of Defendants' actions, some actual and prospective customers have refused to enter into contractual relations with Castle. Thus, Defendants' defamatory statements have caused actual and prospective financial loss to Castle as a result of this intentional interference with Castle's contractual relations with its customers.

34.     By virtue of the foregoing, Defendants are liable to Castle for the damages that Castle has sustained as a result of their intentional interference with Castle's contractual

14

relations.  In addition, Castle is entitled to injunctive relief to restrain and enjoin Defendants from making false and defamatory statements concerning Castle in the future.

## COUNT IV

### (Interference with Prospective Advantageous Business Relations)

35.    Castle repeats and realleges paragraphs numbered 1 through 34 as if fully set forth at length herein.

36.    Defendants knowingly and willfully published, republished and circulated false, disparaging and/or defamatory comments concerning Castle's business and practices for the purpose of causing injury to Castle's business and its relationships with current and prospective customers.

37.    Castle is continuously seeking to enlist new customers.  Some prospective customers have declined to enter into contractual relationships with Castle as a result of Defendants' defamatory statements.  Upon information and belief, the allegations by Defendants have dissuaded some fuel oil retail customers from purchasing fuel oil from Castle.  The foregoing malicious conduct by Defendants has no legitimate business purpose.

38.    By virtue of the foregoing, Defendants are liable to Castle for the damages that Castle has sustained as a result of Defendants' intentional interference with Castle's prospective advantageous business relations.

39.    Defendants' acts of tortious interference with prospective business relations, unless enjoined by this Court, will continue to cause Castle to sustain irreparable damage, loss and injury, for which Castle has no adequate remedy at law.

## COUNT V

### (Violation of N.Y. Gen. Bus. Law § 349)

40.   Castle repeats and realleges paragraphs numbered 1 through 39 as if fully set forth at length herein.

41.   Castle has developed a reputation for providing a high quality of service in the fuel oil industry.  Castle has expended for many years thousands of dollars developing its brand and trademark and market acceptance of its services.

42.   Defendants have knowingly and willfully engaged and continue to engage in deceptive trade acts or practices by making false and disparaging claims about Castle, which have materially injured and continue to injure Castle's business, reputation and good will.

43.   Defendants have engaged and continue to engage in deceptive trade practices in violation of N.Y. Gen. Bus. Law §349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing any service."

44.   Defendants' acts, unless enjoined by this Court, will continue to cause Castle to sustain irreparable damage, loss and injury, for which Castle has no adequate remedy at law.

## COUNT VI

### (Unfair Competition)

45.   Castle repeats and realleges paragraphs numbered 1 through 44 as if fully set forth at length herein.

46.   Defendants have engaged in acts of unfair competition by knowingly and intentionally publishing false and defamatory statements about Castle causing damage to Castle's business relationship with its current and prospective commercial and residential

customers.  Such actions committed by Defendants constitute commercially immoral acts that are improper and constitute unfair competitive acts and trade practices in New York and elsewhere.

47.     As stated above, Castle has expended thousands of dollars developing its brand and trademark and market acceptance of its services.  Defendants have misappropriated Castle's efforts in doing so by knowingly and intentionally publishing false and defamatory statements.

48.     As a result of the aforesaid willful, wrongful conduct of the Defendants, Castle has suffered and will continue to suffer economic loss and injury to reputation and, as a result, is entitled to monetary compensation and punitive damages for the injuries suffered as a result of the damage caused to many of Castle's business relationships with its current and prospective customers.

**COUNT VII**

**(Permanent Injunction)**

49.     Castle repeats and realleges paragraphs numbered 1 through 48 as if fully set forth at length herein.

50.     Castle seeks to preliminarily and permanently enjoin Defendants from publishing the above referenced false and defamatory statements about Castle.

51.     Castle will suffer irreparable injury in the absence of such injunctive relief because Castle's reputation and goodwill with its customers will continue to be injured by Defendants' false and malicious communications.

52.     In addition, the issues of whether Castle has been injured by Defendants' defamation, tortious interference with contractual relations, and unfair competition raise

17

sufficiently serious questions going to the merits of the claims in the underlying dispute, making .

them a fair ground for litigation.

53.     Furthermore, if Defendants are enjoined from their improper actions,
Defendants will not suffer any harm.  As such, a balance of the equities tips decidedly in favor of
granting the injunction.

54.     Accordingly, Castle is entitled to a judgment permanently enjoining
Defendants from communicating the defamatory statements made in the Defamatory Letter.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Castle Oil Corporation respectfully requests judgment against
the Defendants, jointly and severally, as follows:

a. On Count I, that Castle be awarded from the Defendants the damages that
Castle has sustained as a result of Defendants' violation of Section 43 of the
Lanham Act, in an amount to be determined, together with interest, costs and
attorneys' fees;

b. On Count II, that Castle be awarded from the Defendants the damages that
Castle has sustained as a result of Defendants' defamation, in an amount to be
determined, together with interest and costs;

c. On Count III, that Castle be awarded from the Defendants the damages that
Castle has sustained as a result of Defendants' intentional interference with
contractual relations, in an amount to be determined, together with interest
and costs;

d. On Count IV, that Castle be awarded from the Defendants the damages that
Castle has sustained as a result of Defendants' intentional interference with

prospective advantageous relations, in an amount to be determined, together with interest and costs;

e. On Count V, that Castle be awarded from the Defendants the damages that Castle has sustained as a result of Defendants' violation of N.Y. Gen. Bus. Law §349, in an amount to be determined, together with interest, costs and attorneys' fees;

f. On Count VI, that Castle be awarded from the Defendants the damages that Castle has sustained as a result of Defendants' unfair competition, in an amount to be determined, together with interest and costs;

g. On Count VII, that the Court, preliminarily and permanently, and in the exercise of its general equity jurisdiction, enjoin Defendants, their agents, servants, employees, attorneys and all those acting or purporting to act on their behalf, from making, publishing, distributing or otherwise communicating any statement concerning Castle's services and/or concerning the reliability of Castle's fuel oil deliveries;

h. On all Counts, that Castle be awarded from the Defendants on all claims, where appropriate, punitive damages;

i. On all Counts, that Castle be awarded from the Defendants on all claims, where appropriate, attorneys' fees;

j. On all Counts, that Castle be awarded from the Defendants on all claims, where appropriate, prejudgment interest; and

k. The Court grant such other and further relief as it deems just and appropriate, including costs and disbursements.

Dated: New York, New York
       August 3, 2012

                                    BROWN & WHALEN, P.C.

                         By:        _____
                                    Rodney A. Brown (RB 7558)

                                    Attorneys for Plaintiff
                                    260 Madison Avenue, 17th Floor
                                    New York, NY 10016
                                    Tel.: (212) 421-1845

# Exhibit A

**Michael Meadvin**

| | |
|---|---|
| **From:** | Joe Colonel |
| **Sent:** | Wednesday, June 06, 2012 2:25 PM |
| **To:** | Michael Meadvin |
| **Subject:** | FW: Got this today...not good for Castle Oil or the industry in general. |
| **Attachments:** | SCAN0870_000.pdf |

*Joseph W. Colonel*

**From:** jgott2709@aol.com [mailto:jgott2709@aol.com]
**Sent:** Wednesday, June 06, 2012 2:22 PM
**To:** Joe Colonel
**Subject:** Fwd: Got this today...not good for Castle Oil or the industry in general.

got it

-----Original Message-----
From: Louis Romano Sr. <spqr2006@verizon.net>
To: Undisclosed recipients: ;
Sent: Mon, Jun 4, 2012 8:04 am
Subject: Got this today...not good for Castle Oil or the industry in general.

As if Con Ed needed more help to convert buildings to natural gas.

Sent from my iPad. Louis Romano Sr. CEO, Informa Energy Inc. Cell 917-709-3252

1

May 23, 2012


Re: Fuel Delivery Notice


To Whom it May Concern,

This letter is to inform you of recent events regarding Castle Oil and the reliability of fuel deliveries. Please consider the following items.

Did you know in 2007 a trucking company that delivered a major amount of oil to Castle Oil customers was arrested for stealing oil? Mr. Solimane from T & S Trucking pleaded guilty to stealing approximately $75,000,000 worth of fuel from customers. Did your company notify you and refund the money? Feel free to look it up on the internet, this information is readily available to the consumer.

Have you checked your bills to see what you are due back because your company hired a sub-contractor which caused your financial harm? After Castle received over 100 customer complaints regarding shortages they decided to keep these truckers and continue using their services: It makes you wonder how much was Castle benefitting from these shortages? Believe me they have not become a family worth $1,000,000,000 from an honest living. Yes over a billion in assets.

As of today Castle Oil has thieves delivering your oil; BLT Transport has been indicted. BLT has had over 500 customer complaints to Castle for stealing fuel and they remain contracted to deliver oil to your buildings. The majority of their trucking is undergoing investigation from the Federal government.

All you have to do is look and you will see. Other truckers deliver oil for Castle that are under Federal investigation.

G & D Trucking
F & S Trucking
Enterprise Trucking
Nickmanda
JM Trucking  *The owner of this trucking company was the general manager of Castle and found out about their scam. Now he is a trucker on his way to becoming a millionaire.

You have a right to know who is delivering your oil past and present. The fact is that your supplier willingly participated in this scam and the customer lost. Just look and you will see.

Sincerely,

Customer Advocate